E. M. REICHART, Appellee, v. DELLA DOWNS, Executrix, Appellant.

No. 44554.

April 4, 1939.

Joseph J. Redden, for appellee.

J. G. Bardsley, H. L. Robertson, and W. W. Robertson, for appellant.

Bliss, J.—The Peterson brothers were tenants on a farm owned by David M. Downs and wife, under a written lease entered into October 11, 1936, for the year beginning March 1, 1937. About two weeks after the lease was executed, an agreement was made between the landlords and the tenants that the former were to pay for the tractor fuel. Pursuant thereto, Mrs. Downs wrote this notation on the back of the lease, to wit:

"First parties stand good for gas until crops are raised, but get refund." ' The appellee operated a bulk station for the sale of petroleum products at Neola. He delivered by tank wagon driven by his employee, Virgil George, who received a commission of two cents a gallon.

I. Sometime later the Petersons solicited the appellee to purchase some of his merchandise, and the appellee told them that he could not let them have gas that way without seeing Mr. Downs. In company with his employee, George, he called on Downs. Just when this was does not clearly appear. Downs died October 4, 1937, and the defendant qualified as administrator of his estate. Over proper objection that the witness, George, was incompetent under Code section 11257, because he was the agent of the appellee, who delivered the gas, oil, and distillate to the Petersons, and received a commission on the sale, he testified:

"Well, as I said before I did not take any part in the conversation. E. M. Reichart told David Downs what he came down for, and Dave says, said that he agreed to pay for the fuel, and he said that he would get the refund back on the gas tax, but he said, I don't want you to let the bill get too big, not over $150.00. And Mr. Reichart said then, that is all right to let them have that much and he said yes, I will pay for the gas."

The appellant assigns the admission of this testimony as error. We do not agree with this contention. The record shows that George had been paid his commission before the trial. He had no interest in the outcome of the litigation. The statute in question does not name an agent as an incompetent witness. He took no part in the conversation, nor were the remarks of Downs addressed to him. We have repeatedly held that the interest which will disqualify a witness, under this section, must be a present, certain, and vested interest. Cases which clearly support the trial court's ruling are Birge v. Rhinehart, 36 Iowa 369; Wormley v. Hamburg, 40 Iowa 22; Mollison v. Rittgers, 140 Iowa 365, 118 N. W. 512, 29 L. R. A. (N. S.) 1179; Clinton Sav. Bank v. Underhill, 115 Iowa 292, 88 N. W. 357; Chicago, R. I. & P. Ry. v. McElhany, 182 Iowa 1035, 165 N. W. 67; In re Estate of Schultz, 196 Iowa 125, 194 N. W. 242; Hart v.

Hart, 181 Iowa 527, 164 N. W. 849; In re Will of Kenney, 213 Iowa 360, 239 N. W. 44, 78 A. L. R. 1189.

■ II. Sometime in March or April of 1937, the tenants came to Mr. and Mrs. Downs and stated that they were going to need money to operate the farm, and wished to make a government loan of $250 on their personal property, but stated that this could not be accomplished unless the landlords released their lien. Mr. and Mrs. Downs agreed to release their landlord's lien and share in the crop, and did so, but on condition that they be released from their agreement to pay for the tractor fuel and oil. The Petersons agreed to this and secured a loan for $195, and repaid the loan from the sale of part of the landlords' share, and crops on which the landlords would have had a lien. Mrs. Downs, her son, son-in-law and the Petersons all testify to this agreement. The appellee does not deny this agreement. Three witnesses testified that Mrs. Downs told the appellee of this agreement immediately after it was made. He did not deny this. The appellee attached to his petition an itemized statement of his bill against Peterson Bros. showing the first item sold to be on March 16, the second item on March 22, and the third on April 13. These three items were paid by Petersons. The remaining items are on various dates to and including September 24, 1937, and total $133.63. The appellee never presented a bill to Mr. and Mrs. Downs until the claim was filed against the estate. The appellant urges that the agreement of Downs to pay, as testified to by George, was within the statute of frauds, since it was a promise to answer for the debt, default, or miscarriage of another. While the record is somewhat meager as to the facts, we think there was no error in the court's ruling, in permitting George to answer. Under the agreement Downs made the debt his own independent obligation, rather than agreeing to pay the debt of another. Under the agreement evidenced by notation on the lease, he was bound to pay it. He simply told the appellee to deliver the fuel and oil to the Petersons and he would pay for it. Such an agreement is not within the second subsection of Code section 11285, our statute of frauds.

■ It is apparent from the record that although Downs may have told the appellee that he would pay for the fuel and oil that the Petersons might need until the crops were raised, the appellee was promptly told that the landlords had been released

from this obligation by the Petersons, by reason of their aiding the latter to obtain a government loan. The appellee was informed of this change in the arrangement between the landlords and the tenants in March or April, and the earliest unpaid item on the account bears date of April 17th. In the face of this knowledge the appellee delivered all of the merchandise, on which he bases his claim, to the Petersons.

While this appeal is not triable de novo, and we are bound by the judgment of the trial court, if it has support in the record, we are constrained to hold, in view of the undisputed evidence of the appellants, that Downs was not obligated to pay this account, and that his estate should not be charged with it. The judgment appealed from is therefore reversed.— Reversed.

MITCHELL, C. J., and SAGER, HAMILTON, HALE, OLIVER, MILLER, and STIGER, JJ., concur.